LIFE ASS'N OF AMERICA (WILSON v.). See Case No. 17,818.

LIFE INS. CO. (HOLLOMAN v.). See Case No. 6,623.

LIFE INS. CO. (PARTRIDGE v.). See Case No. 10,786

LIFE INS. CO. (TERRY v.). See Case No. 13,839.

## Case No. 8,342.

LIGGETT et al. v. MARSHALL et al.[1]

Circuit Court, D. Kentucky. Nov. 27, 1812.

PUBLIC LANDS—LOCATION AND DESCRIPTION— NEGATIVE AND POSITIVE TESTIMONY.

[1. A certificate and entry describing the land as "lying on the north side of the Kentucky river, * * * about four miles from the river." is too general. and is not saved by the special locative description "on a small branch called Rockhouse," where it does not appear that there was at that time a branch generally known by such name by the persons conversant in that vicinity.]

[2. The rule as to comparative weight of positive and negative testimony does not apply where witnesses testify that a certain fact was notorious in a certain vicinity, while others residing there testify that they had no knowledge of it.]

[3. Notoriety as to the name of a small branch used as a descriptive and locative call in a certificate and entry subsequent to the time of such entry, but prior to the time the rights of others attached, is not sufficient to sustain a claim thereunder.]

[Cited in Simms v. Dickson, Case No. 12,869.]

[This was an action in ejectment by Robert Liggett and others against Thomas Marshall and others.]

J. Allen, for complainants.
H. Marshall, for defendants.

TODD, Circuit Justice. The defendants, having the legal title, claim that they shall not be divested of it, unless the complainants can show a superior equitable title, derived agreeable to the provisions and directions of the land laws. This principle has been long well and correctly settled as it is claimed.

The complainants claim and found their equity on the following certificate and entries:

"December 27th, 1779. Bartlett Searcy this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, lying on the north side of the Kentucky river, on a small branch called Rockhouse, about four miles from the river, by the said Searcy's settling in the country in the year 1777, and residing ever since. Satisfactory proof being made to the court, they are of opinion that the said Searcy has a right to a settlement of 400 acres of land, to include the above location, and the preemption of 1,000 acres adjoining. Certificate not to issue until the further order of the court. Certificate issued for 1,400 acres. by order of the court at Bryants."

"January 17th, 1780. Bartlett Searcy enters 400 acres in Kentucky, by virtue of a certificate, etc., lying on the north side of Kentucky, on a small branch called Rockhouse, and about four miles from the river."

June 23rd, 1780. Robert Burton, Ass'ee of Bartlett Searcy, 1,000 acres on Rockhouse. a branch of Kentucky, on the north side.

———

1 [Not previously reported.]

about four miles from the river, adjoining and around his settlement."

The description and location calls in the certificate, granted by the court of commissioners, and of the entry for the settlement made with the surveyor, are substantially the same. It is contended on the part of the defendants, and it is measurably yielded on the part of the complainants, that both the certificate and entry with the surveyor for the settlement of 400 acres are defective in general description. The general descriptive parts of each are "lying on the north side of the Kentucky, about four miles from the river." At what point on the river is a subsequent inquirer or locator to set out to travel the four miles from the river? He has the whole distance from Leestown, as the lowest, to Boonesborough, as the highest, point (at that time of general resort and notoriety), to examine, —a distance nearly (if not upwards) of one hundred miles. This is giving too great scope of country for subsequent locators to explore, and is imposing on them more than the reason of the case or law requires, and therefore the general description given in the certificate and entry must be considered defective. An entry defective in general description might still be good and valid if it contains special locative or descriptive calls. What are the special locative or descriptive calls of this certificate and entry? They are "on a small branch called Rockhouse." This location and description is also defective, upon the face of the entry, because no clue or description is given by which "a small branch called Rockhouse" can be found, for which the entry must be decreed invalid, unless from the proof in the cause it shall appear that there is a small branch which was generally called and known by the name of "Rockhouse" at the time the certificate was granted and the entry was made, by the generality of those persons who were conversant in its vicinity. This renders it necessary to examine the proofs in the cause.

The depositions of six or seven witnesses have been taken on the part of the complainants to identify and prove the notoriety of Rockhouse before and at the time the certificate was granted and the entry was made. Some of these witnesses swear that in 1775 or 1776 they became acquainted with a spring called Rockhouse, and have never known it called by any other name since. Only one of them deposes that it has been generally called and known by that name since that time, and he, on his cross-examination, is not certain at what time he first saw it, nor in what year he first heard it, or by whom or from what circumstances it was so called, but believes it was in his early acquaintance in those parts, and that it was pretty generally so called at that time; yet he can't tell from what circumstance he founds his belief as to time.

He is certain he saw it in 1784. Another witness deposes that he became acquainted with the spring called Rockhouse in the year 1775. He has since seen it, and has never heard it by any other name. This does not prove that he then knew it by that name. He does not state the time when he first knew it by that name. Others of these witnesses, on their cross-examination, disclose an ignorance of other objects in the vicinity which would attract attention and impress themselves upon the mind as strongly as this spring. Some of them are ignorant of Power's Run, immediately in the neighborhood, a water course running above ground and ninety-two miles long; yet they have no recollection of it, but can speak with certainty as to this spring in a sink hole, the water of which runs under ground, and is visible only a short distance. These depositions, alone considered, leave the mind doubtful as to the fact of notoriety. The witnesses on the part of the complainants have in their depositions named many persons who composed the different companies conversant in that quarter of the country at that time, a great number of whom, together with others equally well acquainted and conversant in the vicinity, have deposed that they never heard of a spring or branch called Rockhouse till subsequent to the granting of the certificate and the making the entries. Some of them knew the spring by one name, some another, and some say it was called by various names, but they never heard it called by the name of Rockhouse till a time subsequent to the origin of Searcy's claim. A review of this mass of testimony negatives the fact as to notoriety.

It has been urged by the counsel for the complainants, that it is the rule in law, that the evidence of one positive witness countervails the evidence of many negative witnesses, and therefore the great preponderance in numbers on the part of the defendants should not avail, and that great allowance should be made on account of the death, removal, and recollection of witnesses. The preponderance in favor of the defendants is three to one. The witnesses on the part of the complainants say that fact as to which they depose was notorious, or, in other words, known to the generality of those who were conversant in that quarter of the country. Now, if three out of four who are referred to as knowing the fact, whose objects were exploring lands, hunting springs, and making improvements, and these were the topics of conversation and full and free communication thereon, depose that they have no knowledge of it, can it be said that the fact did exist? If they had no knowledge of it, it was not generally known. Nor can this kind of testimony be properly called "negative." This point has been well and correctly settled by the court of appeals of this state in the cases Wilson

v. McGee [1 Bibb, 34], and Williams v. Taylor [Id. 41]. The complainants have also taken the depositions of other witnesses as to the notoriety of Rockhouse, about the time the certificate was granted and the entries were made, some of whom, interested in the question, though not in the event of this suit, show a strong bias in their testimony to support this claim. Although these witnesses are deemed competent, their interest in the question is a circumstance which might have influence in weighing their credit; but their testimony, as well as the others, will be found to relate to a time posterior to the granting the certificate and the making the entries. The counsel for complainants contends that the notoriety acquired subsequent to the time of the making the entries, and prior to the time when the claim of the defendants attached to the land in controversy, will be sufficient to sustain this claim. This position appears plausible, and was illustrated with much ingenuity, but will be found to be contrary to the whole current of decisions in this country. Scarcely a case can be examined but it will be seen that the court of appeals, when speaking on the subject of notoriety, uses the phraseology, "before and at the time of making the entry." Frazier v. Steele [Sud. 334]; Morgan v. Robinson [Sud. 228]; Wilson v. McGee [1 Bibb, 34]; Cleland's Heirs v. Gray [Id. 35]; Ward v. Lee [Id. 32]; Craig v. Baker [Hardin, 281]. Were I convinced that these cases were decided upon incorrect principles, I might disregard them; but, as I am not, they will be respected as the decisions of the highest tribunal of the country. It is therefore considered by the court that the complainants' bill be dismissed, and their injunction dissolved, and that the defendants recover of the complainants their costs by them in this behalf expended.